

# NUMBERS 13-14-00074-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**RODOLFO DELGADO JR.,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

---

### On appeal from the 103rd District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Rodolfo Delgado, Jr. appeals his convictions for aggravated sexual

assault and aggravated assault.[1]   *See* TEX. PENAL CODE ANN. §§ 22.021, 22.02 (West,

---

[1] Appellant was indicted in a three count indictment for aggravated sexual assault, aggravated assault, and family-violence assault.   *See* TEX. PENAL CODE ANN. §§ 22.021, 22.02 (West, Westlaw through 2015 R.S.).   The jury convicted appellant on counts one and two, and acquitted him on the third count of family-violence assault.   The complainant for each count was appellant's wife.

Westlaw through 2015 R.S.). After a jury found appellant guilty, the trial court sentenced appellant to twenty-five years on count one and twenty years on count two, imprisonment in the Texas Department of Criminal Justice—Institutional Division, with the sentences to run concurrently. By four issues, appellant challenges the jury charge, the trial court's ruling limiting cross-examination, the trial court's admitting of physical evidence, and the State's alleged comment on his right to remain silent. We affirm as modified.

## I. BACKGROUND

Appellant's wife (complainant) and appellant began arguing over complainant's perceived infidelities. The argument culminated with appellant assaulting complainant with a baseball bat and a plastic sex toy. On the night of the assault, appellant's neighbor heard "raised voices arguing." The neighbor's girlfriend called appellant, who told her that everything was fine. Later that night, the neighbor and girlfriend were awakened by the complainant knocking on their door. Answering the door, they saw the complainant, bloody and crying, with bruises on her arms and thighs. According to the complainant, appellant was trying to kill her and was beating her and hitting her. The complainant's father picked her up from the neighbor's apartment. The complainant went to the hospital and underwent a sexual assault exam. The forensic nurse identified and recorded complainant's bruises and also determined that complainant suffered trauma to her anus. Appellant was later arrested and charged with the assault. After the jury convicted appellant, this appeal ensued.

## II. JURY CHARGE

By his first issue, appellant argues it was error to title section three of the jury charge "Failure to Produce Evidence." Specifically, appellant argues that this is "structural error" and "destroyed the presumption of innocence, destroyed the fairness and reliability of the entire trial." After the close of the evidence during the guilt-innocence phase, the trial court's jury charge included the following section:

~~Failure to Produce Evidence~~ [2]

A defendant may testify and produce evidence in his own behalf if he elects to do so. These are privileges, however, that are granted to a defendant, and, in the event he elects not to testify or to produce evidence on his own behalf, these facts cannot be taken as circumstances against him.

In this case, the Defendant did not testify or produce evidence in his own behalf. You are therefore instructed that you cannot and must not refer or allude to these facts throughout your deliberations or take them into consideration for any purpose whatsoever as circumstances against the Defendant.

## A. Standard of Review

When an appellate court is presented with an argument that a trial court committed jury charge error, the reviewing court must conduct a two-step inquiry: "First, the reviewing court must determine whether the jury charge contains error. Second, the court must determine whether sufficient harm resulted from the error to require reversal." *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998) (en banc); *see Benn v. State*, 110 S.W.3d 645, 648 (Tex. App.—Corpus Christi 2003, no pet.). Once an appellate court finds jury-charge error and where, as here, the error is urged for the first time on appeal, a reviewing court will search for 'egregious harm.'" *Mann*, 964 S.W.2d at 641

---

[2] The heading in the jury charge included the strikethrough and we include it here to show the charge exactly as it was presented to the jury.

(quoting *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994)).   Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.   *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2007).   In sum, the error must have been so harmful as to effectively deny the accused a fair and impartial trial.   *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).

## B.    Applicable Law

The Texas Code of Criminal Procedure provides:   "Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."   *See* TEX. CODE CRIM. PROC. ANN. art. 38.08 (West, Westlaw through 2015 R.S.).

## C.    Analysis

Appellant did not object to the jury charge or otherwise request a different charge during trial, but rather raises his complaints for the first time on appeal.   In arguing the included charge language was error, appellant likens the instruction to the trial court's statements in *Blue v. State*.   *See* 41 S.W.3d 129, 131 (Tex. Crim. App. 2000).   In *Blue*, the trial judge apologized to the jurors about the delay in the case, telling them that the defendant was still deciding whether to accept the State's plea offer or go to trial.   *Id.* The trial judge further told the jurors, "I prefer the defendant to plead," and "[W]e were all trying to work toward that and save you time and cost of time."   *Id.*   A plurality of the

4

Court of Criminal Appeals held that the trial judge's comments vitiated the defendant's presumption of innocence. *Id.* at 131–32.

Unlike *Blue*, appellant's argument does not address comments made during trial, but rather a perceived jury charge error. Even if *Blue* is controlling precedent, its facts are distinguishable.[3] Rather, appellant's complaint is more similar to those in *Vidaurri v. State*, where the defendant complained that the jury charge improperly commented on his failure to testify. *See* 626 S.W.2d 749, 750 (Tex. Crim. App. 1981). The Court of Criminal Appeals noted that the given charge was substantially similar to article 38.08 and held that there was "no harm" to appellant. *See id.*

As in *Vidaurri*, we conclude that the language in section three of the jury charge is substantially similar to article 38.08. *See* TEX. CODE CRIM. PROC. ANN. art. 38.08. The first paragraph of section three is an abstract paragraph that closely tracks article 38.08 while the second paragraph applies article 38.08 to the facts of the case. A charge provision that tracks the relevant statute is sufficient. *Escobar v. State*, 28 S.W.3d 767, 778 (Tex. App.—Corpus Christi 2000, no pet.); *see Rosillo v. State*, 953 S.W.2d 808, 815–16 (Tex. App.—Corpus Christi 1997, pet. ref'd). Having found the jury charge tracked the applicable statute, we hold that there was no error in its inclusion. *See Escobar*, 28 S.W.3d at 778; *see also Vidaurri*, 626 S.W.2d at 750. We overrule appellant's first issue.

### III. LIMITATION OF CROSS-EXAMINATION

Appellant's second issue alleges "the trial court abused its discretion by excluding

---

[3] Plurality opinions do not constitute binding authority. *Unkart v. State*, 400 S.W.3d 94, 100 (Tex. Crim. App. 2013).

evidence which would have showed the jury both bias and motive to lie on the part of the complaining witness when the court did not allow defense counsel to impeach the complainant with an instance of filing a false police report."

During the guilt-innocence phase of trial, appellant attempted to cross-examine the complainant regarding an alleged false police report regarding a vehicle theft.

[DEFENSE COUNSEL]:     And isn't it true that the whole reason you're doing this is because he knows information about you that could get you in trouble, that you're trying to get him locked up for this?

[THE COMPLAINANT]:     No. I am doing this because he did abuse me. He did do what he did to me that night. I'm not making up any of it to get back at him. There's no reason for me to get back at him.

[DEFENSE COUNSEL]:     There's no reason at all? He doesn't know anything about you that you've done that could get you in trouble that you're trying to make sure he gets convicted and sent away?

[THE COMPLAINANT]:     Well, I don't know what you mean by "get in trouble," or—can you elaborate?

The parties later approached the bench for a discussion outside the presence of the jury.

[DEFENSE COUNSEL]:     Your Honor, there's information that she has done some illegal things at her employment that he's aware of that he was going to tell about. There was things that—she filed a false police report on a theft of a vehicle that was never stolen to ruin his credibility.

THE COURT:     Under what authority are you asking that the information come in?

[DEFENSE COUNSEL]:     Well, under her veracity as a witness, Your Honor.   She's asked what—she's basically opened the door with, "What do you mean by these things?" And I'd like to be able to ask her

6

in front of the jury. She can deny them if she needs to, but they are relevant in the sense that my client believes that that's why she's making these things up, these allegations against him.

THE COURT: Your response?

[STATE]: And, Your Honor, defense counsel is trying to open the door himself in the way that he's asking these questions to the witness because he knows that this is improper. She is not convicted of any of these things, so specific conduct to show that she's untruthful is completely against the rules of evidence, Your Honor. The only thing he can do in order to attack her veracity is to bring a witness to talk about her character for truthfulness, or her reputation for truthfulness. But as far as specific instances of conduct, it does not come in unless it's a conviction. This isn't a conviction. He knows it's not, so that's why he's trying to bait her in order to try to open the door himself, which you cannot do that.

[DEFENSE COUNSEL]: Well, it goes as to motive, Your Honor, the motive to lie, her motive to get him in this situation that he's in.

The trial court sustained the State's objection.

## A.  Applicable Law

The Sixth Amendment guarantees an accused in a criminal prosecution the right to confront the witnesses against him. U.S. CONST. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315 (1974); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). The constitutional right of confrontation is violated when appropriate cross-examination is improperly limited. *Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987) (en banc). A defendant's cross-examination provides the jury an opportunity to understand the "whole picture" of a witness's motive or bias for testifying, and observe her testimony

7

in light of such background.  *See Harris v. State*, 642 S.W.2d 471, 479 (Tex. Crim. App. 1982) (en banc).

A defendant may cross-examine a witness on any subject "reasonably calculated to expose a motive, bias or interest for the witness to testify."  *Carroll v. State,* 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).  Texas Rule of Evidence 613(b) allows an opponent to impeach a witness by proof of bias or interest by first questioning the witness and, if the witness denies the bias or motive, "the opponent may introduce extrinsic evidence to prove the motive or bias."  *Hammer v. State,* 296 S.W.3d 555, 563 (Tex. Crim. App. 2009) (citing TEX. R. EVID. 613(b)).  "[G]enerally speaking, the Texas Rules of Evidence permit the defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition."  *Id.*

The trial court, however, has broad discretion to impose reasonable limitations on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence.  *Carroll*, 916 S.W.2d at 498 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).  The court's restriction on cross-examination "does not violate the defendant's 'right to confront a witness as long as (1) the possible bias and motive of the State's witness is clear to the trier of fact and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination.'" *Ho v. State*, 171 S.W.3d 295, 304 (Tex. App—Houston [14th Dist.] 2005, pet. ref'd) (quoting *Stults v. State*, 23 S.W.3d 198, 204 (Tex. App—Houston [14th Dist.] 2000, pet. ref'd)).

**B.    Analysis**

Appellant argues that he intended to introduce the testimony of the complainant's untruthfulness to "show bias and motive for lying and making up the aggravated assault with a deadly weapon and the sexual assault." According to appellant, the inquiry into the allegedly false police report could show the complainant's bias or motive to lie about appellant's commission of the offense.

### 1. Cross-Examination

The scope of appropriate cross-examination is necessarily broad. *Carrol*, 916 S.W.2d at 497. As the Court of Criminal Appeals explained:

> [e]vidence to show bias or interest of a witness in a cause covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite. The rule encompasses all facts and circumstances, which when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only.

*Jackson v. State*, 482 S.W.2d 864, 868 (Tex. Crim. App. 1972) (quotations omitted).

Appellant attempted to question the complainant regarding her motive for testifying, supposedly to exact revenge for his reporting her to internal affairs. These types of questions are fertile ground for cross-examination. The complainant was the only witness to the alleged assault, and showing a motive to exaggerate her testimony would be an important defensive strategy. A defendant is permitted to elicit any fact from a witness intended to demonstrate that witness's vulnerable relationship with the state. *See Alford v. United States,* 282 U.S. 687, 692 (1931); *Harris*, 642 S.W.2d at 480.

In response, the State contends that there is no evidence that the complainant actually made a false police report, and thus the cross-examination was appropriately restricted under the Texas Rules of Evidence. However, evidence of the truthfulness or

9

falsity of the police report is not determinative. What matters is whether appellant was allowed to demonstrate any possible bias or motive that the complainant may have to testify for the State. *See Carrol*, 916 S.W.2d at 500. Here, he was precluded from doing so.

Finally, the State also relies on rule 608(b) to support its position that the trial court did not err in limiting appellant's cross-examination of the complainant. But its reliance is misplaced for several reasons. *See* TEX. R. EVID. 608(b) (prohibiting impeachment of witness's using specific instances of conduct). First, appellant's attempted cross-examination of the complainant primarily related to her person-specific bias against him, not the complainant's general character for truthfulness as to the public at large. [4] Instead, appellant explicitly stated to the trial court his intention to expose the complainant's motive or bias in testifying for the State. Second, even if there was a conflict between the rules of evidence and the Constitution, the constitutional right would prevail. *See Carrol*, 916 S.W.2d at 501; *see also* U.S. CONST. art. VI, c. 2. Accordingly, we conclude that the trial court abused its discretion by limiting appellant's cross-examination of the complainant regarding possible motive or bias. *See Ho,* 171 S.W.3d at 304.

## 2. Harm Analysis

Having found error, we now conduct a harm analysis proscribed by *Van Arsdall*. *See Shelby v. State*, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991) (en banc) (citing *Van*

---

[4] While filing a false police report may also speak to the complainant's general character for truthfulness, this potential prejudicial effect does not substantially outweigh this act's probative value in exposing bias or prejudice. *See* TEX. R. EVID. 403.

*Arsdall*, 475 U.S. at 684). First, we assume that the damaging potential of the cross-examination was fully realized. *Id.* This means that we assume the jury was fully informed regarding appellant's report of complainant's alleged wrongdoing as motivation for her alleged bias. *See Cruz-Escalante v. State*, 491 S.W.3d 857, 860 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Then, with that assumption in mind, we analyze the error using the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* (citing *Van Arsdall*, 475 U.S. at 684). Finally, in light of the first two prongs, we determine whether error was harmless beyond a reasonable doubt. *Id.* (citing *Van Arsdall*, 475 U.S. at 684).

### a. Importance of the Witness's Testimony

Although the complainant was the State's only eyewitness to the assaults, her testimony was not the only testimony supporting the State's case. Forensic nurse Margie Miles examined the complainant at the hospital. Miles testified that the complainant's injuries were consistent with the complainant's explanations of how they occurred. Through Miles, the State introduced photographs depicting the complainant's numerous physical injuries. Forensic nurse Sonja Eddleman explained at trial that the complainant's injuries were consistent with non-accidental trauma. The State introduced additional testimony from the neighbors who heard the argument through the adjoining wall. The neighbor described hearing "a lot of screaming, like slaps, something like

11

somebody panicked, you know, like rustling, you know, rustling noises, like bumping the wall." Later, the complainant knocked on the neighbor's door crying and upset, with bruises on her legs and arms.

The combined testimony of the forensic nurses and the neighbor, in conjunction with the medical evidence, strongly supports an inference that appellant caused the complainant's injuries. We conclude that while certainly important evidence, the complainant's testimony was not the sole source of evidence the State relied upon to prove its case. This factor supports a finding of no harm.

### b. Whether the Testimony Was Cumulative

The complainant's testimony was cumulative in some regards. Her testimony was similar regarding her arrival at her neighbor's house, as described above. The complainant's testimony, however, was vital to the State's case and she provided the only direct evidence that appellant committed the assault. Given the necessity of the complainant's testimony, this factor supports a finding of harm.

### c. Evidence Corroborating or Contradicting Complainant's Testimony on Material Points

The forensic nurses' and the complainant's neighbor's testimonies corroborated the complainant's version of the events. The complainant also gave a medical history and evidence during her medical exam that is largely consistent with her descriptions at trial regarding how she received her injuries. On the other hand, appellant did not testify, and he did not present any contradictory testimony on any material point. Given the corroborating testimony, and the lack of contradictory testimony, we conclude that this factor supports a finding of no harm. *See, e.g., Van Arsdall, 475 U.S. at 684; Shelby,*

12

*819 S.W.2d at 547; see also Bradshaw v. State*, No. 04–11–00173–CR, 2012 WL 1648218, at \*4 (Tex. App.—San Antonio May 9, 2012, pet. ref'd) (mem. op., not designated for publication) ("[A]ny error the trial court may have made in limiting cross-examination" of witness held harmless where the other witness's testimony provided corroboration).

### d. Extent of Cross-Examination Otherwise Permitted

Appellant was otherwise permitted to fully cross-examine the complainant at great length, ranging on topics of the timeliness of her report of the sexual assault, sexual activity and history, and contradictory statements. With respect to the complainant's sexual history, appellant repeatedly asked the complainant intimate details about her sexual activities, whom she discussed her sexual activities, and the details of her divorce from appellant—specifically the division of the marital estate. This factor weighs against finding harm. *See Smith v. State*, 236 S.W.3d 282, 294–95 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (any error harmless where defendant "was otherwise permitted to fully cross-examine" witness).

### e. Overall Strength of the Prosecution's Case

The State presented a compelling case of appellant's guilt. Although appellant attempted to portray the complainant's injuries as coming from consensual rough sex, the complainant undisputedly received numerous and extensive bruises and an anal injury that, according to the State's medical witnesses, was consistent with non-accidental trauma. Even if appellant had been able to impeach the complainant's testimony by showing potential motive or bias, the fact that her neighbors and nurses corroborated her

13

story lessened the potential impact of that impeachment. We conclude this factor weighs against a finding of harm. *See, Van Arsdall, 475 U.S. at 684; Shelby, 819 S.W.2d at 547; see also Brown v. State*, Nos. 14–12–00833–CR, 14–12–00834–CR, 2014 WL 5308790, at *7 (Tex. App.—Houston [14th Dist.] Oct. 16, 2014, pet. ref'd) (mem. op., not designated for publication) ("Even excluding [witness's] testimony," "jury heard compelling testimony of the altercation" from other witnesses "who[ ] testified consistently on the material points).

Based on the foregoing factors, focusing on the complainant's testimony and assuming the jury was fully informed about her alleged false police report and that it constituted motivation for the complainant to lie, we conclude that the trial court's limited denial of appellant's cross-examination on the complainant's alleged false police report, as well as matters related to her employment, were harmless beyond a reasonable doubt. *See Van Arsdall*, 475 U.S. at 684, *Shelby*, 819 S.W.2d at 547. We overrule appellant's second issue.

## IV. ADMISSION OF EVIDENCE

By his third issue, appellant argues "the [trial] court erred in admitting the bat and the [sex toy] into evidence when there was no chain of custody to prove the bat was the bat which was allegedly used in the commission of the aggravated assault, and that the [sex toy] was the [sex toy] which was used to cause her injuries during the alleged sexual assault."

During the guilt-innocence phase of the trial, over appellant's objection, the State introduced several items taken from the complainant's home, including a baseball bat and

14

plastic sex toy, both of which were allegedly used during the commission of the offense. Appellant's objection centered on the "chain of custody"; most specifically, that the officer who collected the items from the home did not write the evidentiary tag number on the police report.

## A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.   *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)); *see also Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).   We will not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement.   *Torres*, 71 S.W.3d at 760; *see also Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree").   In applying the abuse of discretion standard, we may not reverse a trial court's admissibility decision solely because we disagree with it. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).   We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## B.    Applicable Law

Texas Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Haq v. State*, 445 S.W.3d 330, 335 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (quoting TEX.

15

R. EVID. 901(a)). This rule "does not require the State to prove anything." *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd). When the evidence is an object or document with unique or distinctive characteristics, the testimony of a person who perceived the item at the relevant time normally suffices to identify the evidence in court. *Mendoza v. State*, 69 S.W.3d 628, 631 (Tex. App.—Corpus Christi 2002, pet. ref'd). "Although a showing of chain of custody is required where there are routine or generally unidentifiable or undistinguishable scientific tests or analyses, it is not an issue where the items introduced are easily and readily identifiable." *Haq,* 445 S.W.3d at 335; *see also Hartsfield v. State*, 200 S.W.3d 813, 817 (Tex. App.—Texarkana 2006, pet. ref'd) ("Articles that are easily identifiable and are substantially unchanged normally do not require the introduction of a chain of custody.").

**C. Analysis**

During the trial, the State admitted and published pictures, without objection, of the bat and sex toy that were allegedly used in the assault. Based upon Officer Franciso Rivera's later testimony, the bat and sex toy were admitted into evidence. Appellant then objected, arguing that the jury had no way of knowing if the items being offered into evidence were the same items collected at the house.

In order to introduce the items, the State needed to present evidence sufficient to support a finding that the bat and sex toy were what the State claimed them to be, e.g., the objects recovered from the complainant's home and were used in the assault. *See* TEX. R. EVID. 901(a); *Garner*, 939 S.W.2d at 805. Officer Rivera testified that the bat and sex toy were marked with the time of recovery, case number, a description, an address

16

from where it was recovered, and the location. TEX. R. EVID. 901(b)(1); *Haq*, 445 S.W.3d at 337. Also provided on the evidence tag was the name of the officer who collected the specific item. Officer Cynthia Garcia testified that each item was collected from the complainant's house and placed into evidence.

The testimony is sufficient to satisfy the trial court that the exhibits were what the State claimed them to be. *See* TEX. R. EVID. 901; *Mendoza*, 69 S.W.3d at 631. We conclude that the trial court did not abuse its discretion in admitting the two exhibits. *See Torres*, 71 S.W.3d at 760. We overrule appellant's third issue.

## V. DEFENDANT'S POST-ARREST STATEMENTS

By his fourth issue, appellant complains the State committed reversible error when it elicited a statement showing appellant refused to make a statement. Appellant has not preserved this issue for appeal.

### A. Preservation

Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion. *See Archie v. State,* 221 S.W.3d 695, 698 (Tex. Crim. App. 2007) (citing *Jones v. State,* 942 S.W.2d 1, 2 n. 1 (Tex. Crim. App. 2007) (en banc)). To preserve error, an appellant must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a); *see Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). Preservation of error is a prerequisite to presenting a claim on appeal. *See* TEX. R. APP. P. 33.1(a). Even constitutional errors can be waived by failure to preserve them. *See Trevino v. State*, 174 S.W.3d 925, 927 (Tex. App.—Corpus Christi 2005, pet. ref'd) (citing *Smith v.*

*State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986)).

## B.    Analysis

Appellant complains that the State elicited a response from one of its witnesses that appellant refused to give a statement while in custody.   He further argues that the State's use of his post-arrest silence violates his due process rights.   *See Doyle v. Ohio*, 426 U.S. 610, 611 (1976).

During trial, however, appellant did not object to either the State's question or the witness's response which referred to appellant's post-arrest silence.   Appellant has pointed to no case addressing this issue as one of "fundamental error" and, having found none, we decline to address it as such.   *See Ganther v. State*, 187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (objection at trial is unnecessary where error alleged is "fundamental"—that is, when the error causes the defendant to suffer "egregious harm" and prevents him from receiving a fair and impartial trial).   We conclude that appellant failed to preserve this issue for review.   *See* TEX. R. APP. P. 33.1(a).   We overrule appellant's fourth issue.

## VI.    Modification of JUDGMENT

An appellate court may reform a trial court's judgment to make the record speak the truth when it has the necessary data and information to do so.   *See* TEX. R. APP. P. 43.2(b); *Torres v. State*, 391 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

In reviewing the judgment, this Court has noticed two errors that must be corrected. First, the judgment states that there were no findings on "deadly weapon" made by the

18

jury.   The charge of the court, however, shows that deadly weapon findings were made in conjunction with the Count 1 and Count 2 aggravated sexual assault and aggravated assault findings; to wit, a baseball bat.   Second, the judgment states that "punishment" was assessed by the jury.   The record, however, shows that the trial court assessed punishment based upon an agreement presented during the punishment phase.

We modify the judgment to show that "in the course of the same criminal episode, [appellant] used or exhibited a deadly weapon, to-wit:   a baseball bat."   In addition, we modify the judgment to show that the trial court assessed punishment.

### VII.   CONCLUSION

The judgment of the trial court is affirmed, as modified.


GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of September, 2016.

19