**Opinion issued May 7, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01057-CR

————————————

**MOHAMMED HAQ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1305365**

---

**O P I N I O N**

A jury convicted appellant, Mohammed Haq, of the state-jail-felony offense of credit card abuse.[1] The trial court assessed punishment at ten months'

---

[1] *See* TEX. PENAL CODE ANN. § 32.31(b)(8) (Vernon 2011) (providing that person commits offense if he possesses credit card with intent to use it without effective consent of cardholder).

confinement. In two issues, appellant contends that the trial court erroneously admitted (1) a receipt of the alleged unauthorized credit-card transaction, and (2) two photo-arrays shown to witnesses.

We affirm.

## Background

James Jordan, the complainant, testified that he lost his wallet around the beginning of September 2009. When he called his credit card companies to notify them, he discovered that several charges had been made to his cards. Jordan then went to some of the locations where the charges had been made to see if the sales associates could remember the person who "fraudulently used [his] credit card." One of those locations was an auto-parts shop. Jordan told the workers that he had found out that someone had used his credit card without his permission, and he spoke to a man who remembered the transaction. The State showed Jordan a copy of the receipt from the transaction, which had already been admitted into evidence, and asked if he could read the signature. Jordan testified that the name was his name, albeit misspelled, and he confirmed that it was not his signature. He testified that he did not personally know appellant, and he did not give appellant permission to use his credit cards.

Andrew Swan testified that on September 1, 2009, he was working as a sales associate at an O'Reilly Auto Parts in Atascocita. Swan testified that appellant and

2

another man entered the store around 8:30 a.m. and shopped for brake pads. Appellant used a credit card during the transaction and signed Jordan's name on the receipt. Swan obtained appellant's name during the transaction because appellant decided to purchase a lifetime warranty, and he provided his own name and his own telephone number. Swan identified appellant in court as the man with whom he conducted the transaction. Swan stated that he did not check appellant's identification because appellant did not engage in any suspicious activity while in the store, he "moderately knew what he wanted," and he gave Swan a name and phone number for the warranty. He acknowledged that he should have asked for identification and compared names and signatures on the identification, credit card, and warranty.

After the transaction had occurred, Jordan spoke with Swan and told him that someone had used his credit card to purchase parts at the store. Swan searched through the store's copies of receipts from past transactions and found the one at issue. The State showed Swan a copy of the receipt and asked him what it was. Swan identified it as a sales receipt from O'Reilly Auto Parts. Swan testified that the receipt is kept in the normal course of business and that he was the one who generated the receipt, which he could determine because his employee number was printed on the receipt. Defense counsel objected to admission of the receipt on hearsay grounds, but the trial court overruled the objection and admitted the

3

receipt. The receipt reflects a purchase in the amount of $109.31 and a signature that looks like "James Jordan."

On cross-examination, Swan testified that he was not the one who brought the receipt to trial; instead, it was provided by the district attorney's office. He stated that the receipt was generated through a computer and that he was the one who printed the receipt out. Swan testified that store practice was to give one copy of each sales receipt to the customer and store another copy of the receipt in a box under the counter. At the end of each day, employees counted the receipts and locked them in the office for storage. Swan stated that he had not seen the receipt since he had to find it for corporate officials shortly after the incident. He stated that he would not know if any changes had been made to the receipt in the interim time period. He also acknowledged that he was only a sales associate, and it was not part of his job duties to maintain the records of the store.

Defense counsel then renewed his objection to the receipt, stating that the receipt had not "been properly authenticated as a business record." The trial court and Swan then had the following exchange outside the presence of the jury:

> The Court: First time you've seen [the receipt] since all this happened was when?
>
> [Swan]: I probably say—
>
> The Court: Let me see the document, please. I'm sorry. Probably say what?
>
> [Swan]: At maximum, three weeks after the incident.

4

The Court: No. No. Since then, when is the last time?

[Swan]: I haven't.

The Court: Okay. You saw it three weeks after the incident and then when did you see it again?

[Swan]: This part, today.

The Court: Today.

[Swan]: Yes, sir.

The Court: So my question to you is: Can you attest to the fact that everything on here was what was on there when this occurred back in 2009; is that—

[State]: September 1st, 2009, Your Honor.

The Court: Or if somebody had taken this receipt or altered it in any way, would you know that?

[Swan]: Yes, sir. Because all the text is on a dot matrix printer and not many people use those nowadays.

Swan further informed the trial court that before he saw the receipt at trial he would not have been able to state whose signature appeared on the receipt, nor would he have been able to testify to the dollar amount of the purchase or the parts that were purchased. After questioning Swan, the trial court stated, "My ruling stands. [Appellant's] motion's overruled."

Swan also testified that during the investigation into the transaction an officer showed him a photo-array, State's Exhibit 2. He stated that the officer did not tell him that he had to pick someone from the photo-array, and the officer did not tell him whom to select. He testified that he selected someone from the photo-

5

array and that he selected the person from his "visual perception of the gentleman when he came in [the store]." Defense counsel objected to admission of this exhibit, stating, "Appropriate foundation predicate has not been laid for the introduction of this photospread." The trial court overruled the objection and admitted the photo-array. Swan identified his signature next to a picture on the photo-array.

Megan Messinger testified that on September 1, 2009, she was working as a sales associate at a Kohl's department store in Atascocita. She testified that appellant entered the store around 9:00 a.m. with another person and started shopping. When he checked out, the credit card that appellant used was declined three times before he successfully used a card supplied by his companion. The trial court admitted a clip from Kohl's video surveillance system depicting appellant's transaction. Messinger identified appellant in court as the man involved in the transaction.

The State then questioned Messinger about a photo-array that Harris County Constable's Office deputies showed her. Messinger identified the exhibit, State's Exhibit 12, as the photo-array that was shown to her shortly after the incident. She stated that she "[p]icked out the criminal and initialed [her] name." Messinger stated that the deputy never told her that she had to pick someone from the photo-array and that the deputy never told her whom to pick from the photo-array. When

6

the State formally offered this exhibit, defense counsel objected, stating, "Proper predicate foundation has not been established for the entry of this photo lineup." The trial court overruled the objection and admitted the photo-array.

The State did not call the deputy who prepared the photo-arrays and showed the photo-arrays to Swan and Messinger as a witness. This officer had, in the interim time period, retired from the Constable's Office.

The jury found appellant guilty of the state-jail-felony offense of credit card abuse. The trial court subsequently assessed punishment at ten months' confinement.

## Admission of Evidence

In his first issue, appellant contends that the trial court erroneously admitted the O'Reilly Auto Parts receipt because it constituted inadmissible hearsay.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)); *see also Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) ("The admissibility of a photograph is within the sound discretion of the trial judge."). We will not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *Torres*, 71 S.W.3d at 760; *see also Taylor v. State*, 268 S.W.3d 571,

579 (Tex. Crim. App. 2008) (holding that trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree"). In applying the abuse of discretion standard, we may not reverse a trial court's admissibility decision solely because we disagree with it. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B. *Whether Credit-Card Receipt Constitutes Inadmissible Hearsay*

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Generally, hearsay is not admissible except as provided by, among other rules, the rules of evidence. TEX. R. EVID. 802. The business-records exception excludes the following from the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

8

TEX. R. EVID. 803(6); *Bell v. State*, 176 S.W.3d 90, 92 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).  The predicate for the business-records exception thus has three requirements:  (1) the record was made by or from information transmitted by a person with knowledge of the events or conditions recorded; (2) the record was made at or near the time of the events or conditions recorded; and (3) it was in the ordinary course of the reporting entity's business to make and keep such records. *See* TEX. R. EVID. 803(6); *Perry v. State*, 957 S.W.2d 894, 899 (Tex. App.—Texarkana 1997, pet. ref'd).  The rule does not require that the witness laying the predicate for admission under this exception be an employee of the company keeping the record, as long as he has personal knowledge of "the mode of preparing the record."  *Huff v. State*, 897 S.W.2d 829, 839 (Tex. App.—Dallas 1995, pet. ref'd); *see also Campos v. State*, 317 S.W.3d 768, 778 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (stating that testifying witness "need only have knowledge of how the record was prepared").

Appellant does not argue that a credit-card receipt from a store cannot fall within the business-records exception.  *See, e.g.*, *Thomas v. State*, 226 S.W.3d 697, 705 (Tex. App.—Corpus Christi 2007, pet. dism'd) (holding that business's receipt books fall within business-records exception).  Instead, he argues that this particular receipt should not have been admitted under this exception because the

9

State did not establish the necessary trustworthiness of the document. We disagree.

Swan testified regarding the sales procedure at O'Reilly Auto Parts. He stated that when customers purchase a product, the sales associate obtains the customer's signature on a computer-generated receipt. The sales associate gives one copy of the receipt to the customer and retains one copy for the store's records. According to Swan, each day's receipts are stored in a box by the cash register. At the end of each day, the receipts are counted and stored in the locked business office. Swan stated that the receipts are made and kept in the normal course of the store's business. Swan also testified that he was the sales associate who conducted this transaction on behalf of O'Reilly Auto Parts and generated the receipt at issue, which he was able to determine because his particular employee number was printed on the receipt. Thus, Swan testified that the receipt was made and kept in the regular course of O'Reilly's business, that O'Reilly's regular practice was to make a record of each transaction by generating a receipt via computer, that he generated the receipt contemporaneously with the transaction, and that he had personal knowledge of the transaction and was acting in the regular course of business when he generated the receipt. *See Perry*, 957 S.W.2d at 899.

The facts that Swan was not an O'Reilly employee at the time of trial and that he was not O'Reilly's records custodian do not affect the admissibility of this

10

receipt. *See Huff*, 897 S.W.2d at 839 (stating that sponsoring witness does not have to be employee of company keeping record as long as he has personal knowledge of mode of preparing record). Furthermore, although Swan first stated that he would not know if changes had been made to the receipt during the time period between the transaction and the trial, he then stated, in an exchange with the trial court, that he would be able to make this determination because O'Reilly's used a specific type of printer to print its receipts that is not commonly used by others.[2]

We conclude that the trial court reasonably could have determined that the O'Reilly Auto Parts receipt was sufficiently trustworthy to fall within the business-records exception. We hold that the trial court did not abuse its discretion in admitting this exhibit.

We overrule appellant's first issue.

---

[2]     On appeal, appellant argues, "Mr. Swan did not produce the receipt introduced at trial. He did not bring it with him to court and could not explain how it came into the possession of the district attorney's office. In fact, no witness testified as to how the O'Reilly Auto Parts receipt made it from the store to the possession of the district attorney's office." To the extent appellant argues that the State did not properly establish a chain of custody for the receipt, we note that we have previously held that "[a]lthough a showing of chain of custody is required where there are routine or generally unidentifiable or undistinguishable scientific tests or analyses, it is not an issue where the items introduced are easily and readily identifiable." *Edlund v. State*, 677 S.W.2d 204, 210 (Tex. App.—Houston [1st Dist.] 1984, no pet.); *see also Hartsfield v. State*, 200 S.W.3d 813, 817 (Tex. App.—Texarkana 2006, pet. ref'd) ("Articles that are easily identifiable and are substantially unchanged normally do not require the introduction of a chain of custody.").

## C.      *Whether Photo-Arrays Were Properly Authenticated*

In his second issue, appellant contends that the trial court erroneously admitted the photo-arrays shown to Swan and Messinger because these photo-arrays were not properly authenticated.

Texas Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). This rule "does not require the State to *prove* anything." *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd) (emphasis in original); *see also Silva v. State*, 989 S.W.2d 64, 67–68 (Tex. App.—San Antonio 1998, pet. ref'd) (holding same). Instead, the rule "requires only a showing that satisfies the trial court that the matter in question is what the State claims; once that showing is made, the exhibit is admissible." *Garner*, 939 S.W.2d at 805. Evidence may be authenticated or identified by different methods, including testimony from a witness with knowledge that an item is what it is claimed to be. TEX. R. EVID. 901(b)(1); *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet. ref'd); *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "Articles that are easily identifiable and are substantially unchanged normally do not require the introduction of a chain of custody. If the item has distinct or unique

12

characteristics, a witness may authenticate it by testifying that he or she has previously seen the item at the relevant time and place and that the witness recognizes it by its distinctive characteristics." *Hartsfield v. State*, 200 S.W.3d 813, 817–18 (Tex. App.—Texarkana 2006, pet. ref'd) (citing *Outland v. State*, 810 S.W.2d 474, 475 (Tex. App.—Fort Worth 1991, pet. ref'd) and *Mendoza v. State*, 69 S.W.3d 628, 631 (Tex. App.—Corpus Christi 2002, pet. ref'd)).

At trial, defense counsel objected to the introduction of the photo-arrays shown to Swan and Messinger on the ground that the State had not established the appropriate predicate for admission of the photo-arrays. Defense counsel did not elaborate or specifically explain what he thought the State had failed to prove. On appeal, defense counsel argues, in contending that the photo-arrays were not properly authenticated, that the State did not call the officer who generated the photo-arrays and showed them to Swan and Messinger as a witness; the State presented no testimony as to how this officer generated the photo-arrays; the State did not produce the original photo-arrays; no one testified how the district attorney's office obtained the photo-arrays; no one testified that the photo-arrays were unaltered; the photo-arrays were not established as a business or public record "for hearsay purposes"; and it was not established that the photograph of appellant used in the photo-arrays was a fair and accurate representation of him at any time. Appellant also cites the United States Supreme Court's decision in *Neil*

13

*v. Biggers*, 409 U.S. 188, 93 S. Ct. 375 (1972), for the proposition that courts must consider five factors in evaluating the likelihood of misidentification when a witness is shown a photo-array.[3]

First, to the extent that appellant contends on appeal that the trial court erred in admitting the photo-arrays because they constitute inadmissible hearsay, they were impermissibly suggestive, and they did not contain a "fair and accurate representation" of appellant, appellant has not preserved these complaints for appellate review because he failed to object in the trial court on these grounds. *See Perry v. State*, 703 S.W.2d 668, 671 (Tex. Crim. App. 1986) (requiring defendant to object to out-of-court identification procedure before trial court to preserve error); *Rodriguez v. State*, 975 S.W.2d 667, 673 (Tex. App.—Texarkana 1998, pet. ref'd) (holding same); *Tapia v. State*, 933 S.W.2d 631, 633 (Tex. App.—Dallas 1996, pet. ref'd) ("A party must make a timely and specific objection to hearsay to preserve a complaint for appellate review."). Furthermore, both the Court of Criminal Appeals and this Court have previously held that the *Biggers* factors cited by appellant need only be considered once a determination has been made that the relevant out-of-court identification procedure was impermissibly suggestive, which

---

[3] These factors include: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior descriptions of the criminal; (4) the level of certainty demonstrated by the witness at the time of identification; and (5) the length of time between the crime and identification. *See Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S. Ct. 375, 382 (1972).

is not an issue in this appeal. *See Barley v. State*, 906 S.W.2d 27, 34 (Tex. Crim. App. 1995); *Rios v. State*, 263 S.W.3d 1, 9 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd, untimely filed).

Second, appellant cites no authority for the proposition that only the officer who either prepared the photo-array or showed the photo-array to the witnesses can properly authenticate the photo-array, nor does appellant cite any authority for the proposition that testimony concerning how the photo-array was generated is necessary to authenticate the photo-array. Instead, to properly authenticate the photo-arrays, the State need only present evidence sufficient to support a finding that the photo-arrays are what the State claims them to be, e.g., the photo-arrays shown to Swan and Messinger for the purpose of identifying the user of James Jordan's credit card. *See* TEX. R. EVID. 901(a); *Garner*, 939 S.W.2d at 805. This may be accomplished by the testimony of Swan and Messinger, witnesses who have knowledge that the exhibits in question are what the State claims them to be. TEX. R. EVID. 901(b)(1); *Dossett*, 216 S.W.3d at 17; *Martinez*, 186 S.W.3d at 62.

Here, Swan and Messinger identified State's Exhibit 2 and State's Exhibit 12, respectively, as the photo-arrays shown to them by a Harris County Constable's Office deputy. They both identified their signatures next to the picture that they had selected. *See Hartsfield*, 200 S.W.3d at 818 (stating that witness may authenticate exhibit by testifying that he or she saw exhibit at earlier time and

15

recognized it by distinctive characteristic). This testimony is sufficient to satisfy the trial court that the exhibits were what the State claimed them to be—the photo-arrays shown to Swan and Messinger. *See* TEX. R. EVID. 901; *Garner*, 939 S.W.2d at 805.

We hold that the trial court did not abuse its discretion in admitting the photo-arrays shown to Swan and Messinger.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish.   TEX. R. APP. P. 47.2(b).