

## Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00846-CR

Daniel Moreno **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR8174A
Honorable Ron Rangel, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
         Rebeca C. Martinez, Justice
         Luz Elena D. Chapa, Justice

Delivered and Filed: September 4, 2019

AFFIRMED

Daniel Moreno Lopez was convicted by a jury of murder. On appeal, Lopez contends the evidence is insufficient to support his conviction. Lopez also asserts the trial court erred by: (1) admitting an autopsy report and DNA test results into evidence; and (2) overruling his objection to a hearsay statement. We affirm the trial court's judgment.

### BACKGROUND

The jury charge allowed the jury to find Lopez guilty of the offense of murder if Lopez, either acting alone or together with another as a party, either: (1) intentionally or knowingly caused

the death of Jose Luis Menchaca by striking him with a bat or asphyxiating him; or (2) with the intent to cause serious bodily injury to Menchaca, committed an act clearly dangerous to human life that caused Menchaca's death by striking him with a bat or asphyxiating him.

Based on the evidence presented over five days, the jury found Lopez guilty. Lopez appeals.

SUFFICIENCY

In his first issue, Lopez contends the evidence is insufficient to establish his actions caused Menchaca's death.

In reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). "[T]he jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony." *Zuniga*, 551 S.W.3d at 733. Accordingly, we defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Sabrina Cavazos, the girlfriend of Lopez's cousin Gabriel Moreno, testified she and Lopez's girlfriend, Candie Dominguez, lured Menchaca, who was Dominguez's cousin, to Dominguez's house on a pretext to allow Lopez to retaliate against Menchaca for stabbing him a few days earlier. Sylvia Flores, Menchaca's girlfriend, accompanied Menchaca to Dominguez's house. Both Cavazos and Flores testified they were present and witnessed Lopez and Moreno severely beat Menchaca with metal baseball bats in the master bedroom of Dominguez's house.

After the beating, Cavazos testified Menchaca was gasping for air and begging them not to kill him.

Dennis Austin lived at a house on Canter Horse with his girlfriend, Priscilla Gallegos, who was also Lopez's and Moreno's cousin. Both Austin and Cavazos testified Austin and Gallegos arrived at Dominguez's house after the beating. When he arrived, Austin testified Menchaca was bound and gagged, breathing but unconscious. Austin stated Lopez instructed Moreno and Austin to carry Menchaca's body to a detached garage. After Menchaca's body was moved to the garage, Austin testified Lopez placed a black bag over Menchaca's head and started suffocating him, telling Menchaca that Lopez would decide if he lived or died. Austin testified Moreno was holding Menchaca down as he struggled. Austin stated Lopez was not able to suffocate Menchaca, and they left his body in the garage. Cavazos testified she later returned to the garage and saw Menchaca's body with a black trash bag taped around his neck with duct tape. Cavazos further testified Menchaca was not moving or breathing.

A few days later, Cavazos and Austin testified Austin and Moreno moved a blue plastic tub containing Menchaca's dismembered body from Dominguez's house to the Canter Horse house, and Austin and Moreno buried the body in the backyard. Austin testified Lopez and Dominguez subsequently dug the body back up and transported it in the blue tub back to Dominguez's house. Several days after the beating, Flores testified she saw Lopez poking at an arm or a leg in a barbecue pit at Dominguez's house.

Law enforcement officers subsequently recovered the blue tub containing Menchaca's dismembered torso from Dominguez's garage. The blue tub was placed in a body bag and transported to the medical examiner's office. A white sheet containing the contents of the barbecue pit was placed in a second body bag and transported to the medical examiner's office. The medical examiner identified arm and leg bones in the contents of the second body bag. In examining the

contents of the blue tub, the medical examiner testified Menchaca's head was wrapped in black plastic and secured with duct tape, a rope was found around his torso, and duct tape had also been placed over his mouth and nose. The medical examiner further testified regarding the extensive blunt force trauma to Menchaca's skull, head, and neck. The medical examiner identified the cause of Menchaca's death as homicidal violence by either blunt force trauma, asphyxiation, or a combination of both.

Although evidence was presented regarding the deals Cavazos and Austin made with the State in exchange for their testimony, and inconsistencies in their testimony were emphasized on cross-examination, the jury was the sole judge of the credibility of the witnesses. *See Zuniga*, 551 S.W.3d at 733. Having reviewed the entire record, we hold the evidence is sufficient to support the jury's finding that Lopez was guilty of murder either acting alone or as a party to the offense. Lopez's first issue is overruled.

## AUTOPSY REPORT AND DNA TEST RESULTS

In his second issue, Lopez contends the trial court erred in admitting an autopsy report and DNA test results because a proper chain of custody was not established with regard to the blue tub containing Menchaca's dismembered body that was examined and tested.

Texas Rule of Evidence 901(a) provides, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Thus, the rule requires "a showing that satisfies the trial court that the matter in question is what the [proponent] claims; once that showing is made, the exhibit is admissible." *Haq v. State*, 445 S.W.3d 330, 336 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (internal quotation omitted). A trial court does not abuse its discretion in admitting evidence it reasonably believes a reasonable juror could find

has been authenticated or identified. *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007).

Distinctive characteristics "taken together with all the circumstances" may be sufficient to establish an item is what a party represents it to be. TEX. R. EVID. 901(b)(4). "'Articles that are easily identifiable and are substantially unchanged normally do not require the introduction of a chain of custody.'" *Haq*, 445 S.W.3d at 336 (quoting *Hartsfield v. State*, 200 S.W.3d 813, 817-18 (Tex. App.—Texarkana 2006, pet. ref'd)). "'If the item has distinct or unique characteristics, a witness may authenticate it by testifying that he or she has previously seen the item at the relevant time and place and that the witness recognizes it by its distinctive characteristics.'" *Id.* (quoting *Harsfield*, 200 S.W.3d at 817-18). "When the evidence does not have unique or distinctive characteristics, the chain of custody may be required to establish that the item presented in trial is the same one involved in the events in issue." *Jackson v. State*, 968 S.W.2d 495, 500 (Tex. App.—Texarkana 1998, pet. ref'd).

In this case, Menchaca's dismembered body was placed in a blue plastic tub which was identified by Cavazos and Austin, photographed at the crime scene and identified by numerous law enforcement witnesses, and placed in a body bag and transported to the medical examiner's office. Additional photographs of the blue plastic tub and its contents were taken at the medical examiner's office and admitted into evidence. Because the blue plastic tub had unique or distinctive characteristics, the trial court did not abuse its discretion in determining the State made a sufficient showing that the blue tub containing the contents that were examined and tested by the medical examiner and the supervisor of the DNA forensic laboratory is the same blue plastic tub identified by Austin and Cavazos as the blue tub into which Menchaca's dismembered body had been placed and the same blue tub recovered from the crime scene. Accordingly, Lopez's second issue is overruled.

**HEARSAY STATEMENT**

In his third issue, Lopez contends the trial court erred in admitting hearsay testimony on the basis that the statements were admissible under Texas Rule of Evidence 801(e)(2)(E) as a statement made by a co-conspirator.

Rule 801(e)(2)(E) provides that a statement by a co-conspirator is not hearsay if the statement is offered against a party and "was made by the party's coconspirator during and in furtherance of the conspiracy." TEX. R. EVID. 801(e)(2)(E). "In order to satisfy this exception, the State must show that a conspiracy existed in which the co-conspirator was a member of or later participated in the conspiracy, and that the statements made were the object and purpose of the conspiracy." *Guidry v. State*, 9 S.W.3d 133, 148 (Tex. Crim. App. 1999). "It is not required that a conspiracy be charged, only that one be shown to have existed." *Guevara v. State*, 297 S.W.3d 350, 361 (Tex. App.—San Antonio 2009, pet. ref'd). "A statement furthers a conspiracy if it advances the cause of the conspiracy or serves to facilitate it." *Id*. We review a trial court's decision to admit evidence under an abuse of discretion standard, and a trial court does not abuse its discretion if it was within the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

In his brief, Lopez refers to hearsay statements but fails to otherwise identify the specific statements about which he complains. The only record citation in Lopez's brief in his argument of this issue is the following: "(Beginning at Vol 4 RR Pg 14, Lns 2-9 and repeating throughout the trial)." Rule 38.1(i) of the Texas Rules of Appellate Procedure requires the argument section of an appellant's brief to be supported with appropriate citations to the record. TEX. R. APP. P. 38.1(i). As an appellate court, "we are under no duty to make an independent search of the record to determine whether an assertion of reversible error is valid." *Belle v. State*, 543 S.W.3d 871, 879 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Accordingly, we will only consider whether the

trial court abused its discretion in overruling the objection made on lines 2-9 on page 14 of the fourth volume of the reporter's record. *See Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995) (noting where brief fails to cite pages in the record where alleged errors are shown, an appellate court is not required "to pore through hundreds of pages of record in an attempt to verify an appellant's claims").

The statement to which Lopez's attorney objected on the page of the record cited in Lopez's brief is a statement Moreno made to Cavazos telling her they were going to bury Menchaca's body in the backyard of the Canter Horse house. Based on the evidence presented regarding Moreno and Lopez planning to beat Menchaca, and their subsequent actions relating to his body, the trial court did not abuse its discretion in finding a conspiracy between Moreno and Lopez existed. Furthermore, the trial court did not abuse its discretion in finding that Moreno's statement about his plan to bury Menchaca's body was in furtherance of the conspiracy. *See King v. State*, 189 S.W.3d 347, 359 (Tex. App.—Fort Worth 2006, no pet.) (holding statements regarding the disposition of a murder victim's body were in furtherance of a conspiracy); *Lee v. State*, 21 S.W.3d 532, 538 (Tex. App.—Tyler 2000, pet. ref'd) (noting statements "formulating future strategies of concealment to benefit the conspiracy" are in furtherance of a conspiracy). Accordingly, Lopez's third issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Rebeca C. Martinez, Justice

DO NOT PUBLISH