

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00461-CR

D'Andria **BALDERRAMA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR6542
Honorable Melisa C. Skinner,[1] Judge Presiding

Opinion by:  Beth Watkins, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: May 24, 2023

AFFIRMED

In eight issues, appellant D'Andria Balderrama appeals her felony conviction for driving while intoxicated. We affirm.

## BACKGROUND

Around 2:30 a.m. on March 6, 2018, San Antonio Police Department Officer Eluterio Rendon saw Balderrama driving a BMW westbound on the I-10 access road at a high rate of speed. After driving more than a mile to catch up to Balderrama, Rendon activated his emergency lights

---

[1] The Honorable Raymond Angelini presided over the jury trial.

and Balderrama pulled into a parking lot. Rendon only planned to address Balderrama's speeding, but as he reached the driver's window, he smelled the "strong odor of an alcoholic beverage coming from inside the vehicle," so he began a DWI investigation. After attempting to conduct field sobriety tests, Rendon arrested Balderrama for DWI. While looking through her clutch wallet, he found a receipt from a nearby sports bar reflecting a cash payment for "four Crown Royals" approximately one hour before the stop.

Balderrama had two previous DWI convictions, so the State indicted her for felony DWI. A jury found Balderrama guilty of that offense and the trial court sentenced her to ten years' imprisonment, probated for ten years. This appeal followed.

### ANALYSIS

### *Issue 1-Speedy Trial*

In her first issue, Balderrama argues that the delay in the trial of her case violated her Sixth Amendment right to a speedy trial.

Preservation of error requirements apply to speedy-trial claims. *Henson v. State*, 407 S.W.3d 764, 768–69 (Tex. Crim. App. 2013). Balderrama's jury trial occurred from June 29 through July 1, 2021. On September 13, 2021, she filed a "motion for speedy trial" asking for speedy sentencing. She was sentenced on October 5, 2021. *See Betterman v. Montana*, 578 U.S. 437, 439, 447–48 (2016) (speedy trial right does not extend beyond conviction, although due process right to liberty, while diminished, is still present and protects an interest in a sentencing proceeding that is fundamentally fair). As Balderrama acknowledges, she did not assert her right to a speedy trial before conviction. Because Balderrama did not timely demand a speedy trial, she did not preserve the issue for appellate review. *Henson*, 407 S.W.3d at 769. We therefore overrule Balderrama's first issue.

### *Issue 2-Legal Sufficiency*

In her second issue, Balderrama argues the evidence was not legally sufficient to support her conviction.

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal quotation marks and emphasis omitted). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

We hold the evidence presented at trial was sufficient to support the verdict. A person commits the offense of felony DWI if she is "intoxicated while operating a motor vehicle in a public place" and she has two or more previous convictions relating to "the operating of a motor vehicle while intoxicated." TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2). Balderrama challenges only the sufficiency of the evidence to prove intoxication. The State meets its burden of showing intoxication if it demonstrates that the defendant either: (A) lacked "the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body"; or (B) had "an alcohol concentration of 0.08 or more." TEX. PENAL CODE ANN. § 49.01(2).

The State can show that a defendant was intoxicated based on testimony from an experienced officer who has "on numerous occasions observed persons under the influence of alcoholic beverages" and who observed the defendant during the relevant time. *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel. Op.] 1979). Rendon testified that, at the time of the stop, he had been on the DWI Task Force for nine years and had "probably done [more] than 5,000 [field sobriety tests]." Rendon acknowledged that once he caught up to Balderrama, she pulled over without incident. But he observed indicators of intoxication: he smelled alcohol coming from the vehicle, and Balderrama had a "flushed droopy appearance," glassy, bloodshot eyes, and slurred speech. *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). Balderrama gave conflicting statements and was at times "very incoherent." She initially insisted that she had not been drinking.

Rendon asked Balderrama to step out of the vehicle so he could administer field sobriety tests. When asked if she had any medical issues that could interfere with the tests, such as "head, back, knee or hip injuries," Balderrama responded "all of the above." But to Rendon, she looked "perfectly fine" and was "walking fine." On the first test, the horizonal gaze nystagmus test, Rendon observed all six clues of intoxication. Rendon could not conduct the second test, the walk and turn test, because Balderrama kept interrupting the instructions, so he proceeded to the third test—the one leg stand test. Rendon observed two of the four possible clues on this third test. The "inability to perform field sobriety tests or follow directions" raises an inference of intoxication. *Id*. After the tests, Balderrama acknowledged drinking two glasses of wine at dinner. Then she changed that admission to one glass of wine.

Based on his experience and observations, Rendon believed Balderrama had "lost the normal use of her mental and physical faculties" and was operating a motor vehicle intoxicated. In addition to Rendon's testimony, the jury also saw the video from Rendon's body-cam which

captured his interaction with Balderrama. The video buttressed Rendon's testimony. *See Paschall v. State*, 285 S.W.3d 166, 177 (Tex. App.—Fort Worth 2009, pet. ref'd). This evidence was sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that Balderrama was intoxicated. *Jackson*, 443 U.S. at 319; *Annis*, 578 S.W.2d at 407. We therefore overrule her second issue.

### *Issue 3-Evidentiary Rulings*

In her third issue, Balderrama complains that the trial court erred in excluding her witness and in admitting the receipt from the sports bar.

### 1.     Exclusion of Witness

Balderrama argues the trial court improperly excluded the testimony of her witness Dr. Fedrico Ng, resulting in harmful error. Preservation requirements apply to improper exclusion of evidence claims. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). Texas Rule of Evidence 103 provides that a party may claim error in a ruling to "exclude evidence only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." TEX. R. EVID. 103(a)(2). "The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form." *Mays*, 285 S.W.3d at 889.

On the morning the jury trial began, Balderrama filed a motion to have Dr. Ng testify by video. The motion did not describe Dr. Ng's proffered testimony and Balderrama failed to make an offer of proof when the trial court denied it. She argues that the "trial court did not conduct [a] hearing nor take into consideration the emergency orders of Texas Supreme Court and/or the Bexar County COVID-19 Operating Plan effective June 9, 2021[.]" But Balderrama did not ask for such a hearing. And the emergency orders and operating plan do not suspend the rules of error preservation. Because Balderrama failed to comply with Texas Rule of Evidence 103 by making

an offer of proof and the relevance of the testimony was not otherwise apparent, she did not preserve the issue for appellate review. *Id*. We overrule Balderrama's first evidentiary complaint.

2.      Admission of Bar Receipt

Balderrama next argues that the trial court erred in admitting the receipt from the sports bar over her authenticity and hearsay objections.

Authenticity

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). A document's "distinctive characteristics," such as its appearance, contents, substance, or internal patterns, taken in conjunction "with all the circumstances," can provide sufficient indicia of reliability to authenticate it. TEX. R. EVID. 901(b)(4). Once Rule 901's requirements are satisfied—and if the evidence is otherwise admissible—the evidence's persuasive force is left to the jury. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). "The trial court's determination of whether the proponent has met this threshold requirement is subject to appellate review for an abuse of discretion[.]" *Id*.

At trial, the State offered the receipt accompanied only by Rendon's testimony. Rendon testified that, after he arrested Balderrama, he took custody of her valuable things, including a clutch wallet containing "all her credit card and personal information." In it, he found "a receipt from Boneheadz," a bar "three to four miles" from where he pulled Balderrama over. The receipt includes a date/time stamp of March 6, 2018 at 1:31 a.m.:



Rendon testified he stopped Balderrama about an hour later. The trial court did not abuse its discretion in determining that the State met the threshold authentication requirement. *Id.* The document's "distinctive characteristics," including its date and time stamp, taken in conjunction with circumstances of the traffic stop (occurring shortly after the receipt was generated and relatively near where it was generated) satisfy the authentication requirement. TEX. R. EVID. 901(b)(4); *cf. United States v. Thornton*, 197 F.3d 241, 251 (7th Cir. 1999) (finding seized merchandise receipts sufficiently distinctive to qualify as self-authenticating under Federal Rule of Evidence 901(b)(4)). The evidence may nevertheless be inadmissible as hearsay.

<u>Hearsay</u>

Receipts, if offered for the proof of the matter asserted, may be admissible under the business-records exception to the hearsay rule. *See Haq v. State*, 445 S.W.3d 330, 335 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (O'Reilly Auto Parts receipt sufficiently trustworthy to fall within the business-records exception given testimony of sales associate). Texas Rule of Evidence 803(6) allows for admission of business records if certain conditions are shown by

testimony of a records custodian or another qualified witness or by an affidavit or declaration that complies with Rule 902(10). TEX. R. EVID. 803(6)(D). The testimony or affidavit must show that "(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted business activity; [and] (C) making the record was a regular practice of that activity[.]" TEX. R. EVID. 803(6); TEX. R. EVID. 902(10). A trial court's ruling on the admissibility of evidence pursuant to a hearsay exception is a matter of discretion and reviewed under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

On this record, the trial court abused its discretion in admitting the receipt through the testimony of Rendon. The receipt was offered for its truth: that a bar tab from Boneheadz Sports Bar for four Crown Royals was paid for with cash on March 6, 2018 at 1:31 a.m. Rendon was not qualified to, and did not attempt to, attest to the fact that the receipt was a record of regularly conducted business activity for Boneheadz. As a result, the trial court abused its discretion by admitting the receipt over trial counsel's hearsay objection.

But the improper admission of evidence is non-constitutional error that this court disregards unless the error affected an appellant's substantial rights. TEX. R. APP. P. 44.2(b). Under Rule 44.2(b), we may not reverse if, after examining the record, we have a fair assurance that the error did not have a substantial and injurious effect or influence in determining the defendant's conviction or punishment. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). Here, we have that fair assurance—there was overwhelming evidence of Balderrama's guilt notwithstanding the receipt. As stated above, Balderrama was speeding shortly after 2:00 a.m., when bars are known to close. She smelled of alcohol, her speech was slurred, and she had bloodshot eyes. She performed poorly on some field sobriety tests and was unable to complete others. Rendon's body-cam footage corroborated his testimony. "Accordingly, any error in the

admission of the [receipt] did not affect [Balderrama's] substantial rights and was harmless." *See Hines v. State*, 383 S.W.3d 615, 625 (Tex. App.—San Antonio 2012, pet. ref'd); TEX. R. APP. P. 44.2(b). We overrule Balderrama's second evidentiary complaint, and therefore her third issue.

### *Issue 4-Motion to Suppress*

Balderrama next argues the trial court erroneously denied her motion to suppress because Rendon illegally extended the traffic stop. At the suppression hearing, Balderrama sought to suppress her statements, her conduct, and the field sobriety tests. "We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review." *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). "[W]e afford almost complete deference to the trial court in determining historical facts [but] review de novo whether the facts are sufficient to give rise to reasonable suspicion in a case." *Id*. at 190. "In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred." *Id.* "A traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop." *Id*. But "if an officer develops reasonable suspicion that the driver or an occupant of the vehicle is involved in criminal activity the officer may continue questioning the individual regardless of whether the official tasks of a traffic stop have come to an end." *Id*. at 191.

At the motion to suppress hearing, Rendon testified Balderrama was speeding. He therefore had probable cause to pull her over. *Id*. at 190. The evidence shows that Rendon expeditiously questioned Balderrama and learned of facts giving rise to a reasonable suspicion that the crime of DWI had been committed: he smelled alcohol coming from the vehicle, he heard Balderrama's slurred speech, and he saw her glassy, bloodshot eyes. *Kirsch*, 306 S.W.3d at 745. He promptly

performed the field sobriety tests, then arrested Balderrama. Rendon did not unlawfully prolong the traffic stop. *Lerma*, 543 S.W.3d at 191. We therefore overrule Balderrama's fourth issue.

### *Issue 5-Jury Instructions*

Balderrama next argues that the trial court committed error by including the full statutory definition of "intoxication" in the jury charge—including loss of faculties by reasons other than alcohol, and alcohol concentration of 0.08 or higher (intoxication "per se")—because those were not supported by the record. *See* TEX. PENAL CODE § 49.01(2). We agree.

A "trial court must submit to the jury only the portions of the statutory definition of 'intoxicated' that are supported by the evidence. To do otherwise is error." *Burnett v. State*, 541 S.W.3d 77, 84 (Tex. Crim. App. 2017). Here, there was no alcohol concentration evidence, nor any evidence of intoxication by a substance other than alcohol. The State did not try to prove intoxication by those means. *Cf. Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011). And Balderrama did not object to the definition in the charge. To be reversible, any unpreserved jury-charge error must result in egregious harm. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). "Under *Almanza*, reviewing courts should consider the following four factors: 1) the charge itself; 2) the state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and 4) any other relevant information revealed by the record of the trial as a whole." *Olivas*, 202 S.W.3d at 144.

First, the over-inclusive definition of intoxication was not included in the application paragraph of the charge, or otherwise repeated within the charge. Second, the only contested issue in this case was whether Balderrama had lost normal use of her mental or physical faculties by reason of the introduction of alcohol. Third, the parties' arguments focused the jury on that issue.

Balderrama's trial counsel highlighted that Rendon looked for contraband but did not find any. And the State acknowledged that there was no evidence of the level of alcohol concentration in Balderrama's body. In closing, the prosecutor argued, "We didn't bring you the scientific evidence[.] . . . We don't have to bring the scientific evidence. We only have to prove to you one of those three options [loss of physical faculties, loss of mental faculties, or intoxication per se] to show someone's legally intoxicated in Texas."

Fourth, the terms "controlled substance," "drug," or some variation thereon were mentioned only when the trial court read the charge's definition section. This error did not affect the very basis of the case, did not deprive Balderrama of a valuable right, and did not vitally affect a defensive theory. *Marshall*, 479 S.W.3d at 843; *Olivas*, 202 S.W.3d at 144.

We therefore hold that the unpreserved jury-charge error did not result in egregious harm and overrule Balderrama's fifth issue.

### *Issue 6- Grant of Counsel's Motion to Withdraw Without Defendant Present*

In her sixth issue, Balderrama argues that the trial court committed error when it conducted a pre-trial criminal proceeding on April 9, 2021 outside her presence to allow her second counsel[2] to withdraw.

"[A] defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Snyder v. Massachusetts*,

---

[2] Balderrama was initially represented by retained counsel. After this first counsel withdrew, the trial court appointed counsel. Approximately sixteen months later, this second counsel filed a motion to withdraw, based on "irreconcilable differences," which the trial court granted. The trial court appointed a new lawyer approximately ten weeks before trial, and this third counsel represented Balderrama at trial. For convenience, we will refer to Balderrama's appointed counsel as her "second counsel" and "third counsel."

291 U.S. 97, 105–06 (1934)). A defendant also has a statutory right to be present during any "pre-trial proceeding." TEX. CODE CRIM. PROC. ANN. art. 28.01.

"[B]y its terms, Article 28.01 comes into play only when the trial court exercises its discretion to 'set' a criminal case for a pre-trial hearing." *State v. Velasquez*, 539 S.W.3d 289, 294–95 (Tex. Crim. App. 2018). Such a hearing is discretionary with the trial court. *Id.* at 295. Nothing in the record supports that such a hearing occurred in this case, "so the trial court cannot be said to have run afoul of the literal language of the statute." *See id.*

Under these circumstances, we cannot say that the trial court violated due process or Article 28.01. *See Snyder*, 291 U.S. at 107–08 ("[P]resence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."); *compare Riggall v. State*, 590 S.W.2d 460, 461–62 (Tex. Crim. App. 1979) (Article 28.01 violated because neither defendant nor counsel were present during hearing on motion to dismiss for failure to prosecute and language in order indicated trial court considered evidence before ruling on defendant's motions), *with Malcom v. State*, 628 S.W.2d 790, 792 (Tex. Crim. App. 1982) (Article 28.01 not violated because record did not indicate trial court considered evidence or testimony before ruling on defendant's motion to substitute counsel); *see also Watkins v. State*, 333 S.W.3d 771, 775–76 (Tex. App.—Waco 2010, pet. ref'd) (concluding that facts of the case were more like *Malcom* than *Riggall* because there "are no findings in the order or other indications that evidence or testimony was heard or considered" before the trial court ruled on defendant's motion to dismiss his court-appointed trial counsel).

We therefore overrule Balderrama's sixth point of error.

### *Issue 7-Grant of Counsel's Motion to Withdraw Without Notice*

In her seventh issue, Balderrama argues that the trial court committed error when it granted her second counsel's motion to withdraw without notice to her.

The trial court has a responsibility to appoint counsel to represent indigent defendants in criminal cases and the "discretion to determine whether counsel should be allowed to withdraw from a case." TEX. CODE CRIM. PROC. ANN. art. 1.051(c); *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). "Although an indigent defendant does not have the right to counsel of his own choosing, once counsel is appointed, the trial judge is obliged to respect the attorney-client relationship created through the appointment." *Buntion v. Harmon*, 827 S.W.2d 945, 949 (Tex. Crim. App. 1992) (orig. proceeding). As such, the trial court cannot arbitrarily replace appointed counsel. *Id*. Rather, the trial court has authority to relieve or replace appointed counsel after a finding of good cause is entered on the record. TEX. CODE CRIM. PROC. ANN. art. 26.04(j)(2).

The parties agree that there is no record of any hearing on second counsel's motion to withdraw. Nor did Balderrama timely object to the substitution. Instead, Balderrama's third counsel made an offer of proof at the end of the guilt-innocence stage, outside the presence of both the judge and the jury:

> [THIRD COUNSEL]: Good morning, this is an offer of proof. . . . I have been appointed for the defendant, D'Andria Balderrama.
>
> This is a case where I am, I believe, the third attorney for Ms. Balderrama. Last week there [was] a trial setting, my first appearance, and at this setting the Court ruled that it had had enough of this case, this was the 18th setting, and it must go to trial next week no matter what.
>
> My client, Ms. Balderrama, it was not her fault of the settings. Much of that was due because of the COVID pandemic resets throughout the last year and a half.
>
> And more importantly, her [second counsel] filed a motion to withdraw in this case without Ms. Balderrama's knowledge, and the order allowing [him] to withdraw was granted without her presence, and again without her knowledge.
>
> And finally, approximately November/December 2020 Ms. Balderrama was led to believe that the blood evidence was going to be used, so she focused her defensive theory on combating that evidence and did not find out until last week in front of Judge Skinner that the prosecution decided not to pursue that evidence and withdrew it themselves. This was news to her, and required her to alter her entire defensive theory in only a few days and prepare for trial.

After the jury returned its verdict, Balderrama herself addressed the trial court, stating:

> [T]here was [a] motion to withdraw counsel, and I wasn't present. I did not know the State went on the record and said that they were going to be using blood analysis. We focused the case on that, and this was a court appointed attorney who filed a motion to withdraw and I don't even know why. And it was granted.
>
> And moving beyond that is the fact that I was prepping with this -- with this counsel for so long [] and spent so many hours. And when we finally got to this point, Judge Skinner, respectfully, she went ahead and said, 18th setting, it's been way too much[]. When hiring an attorney and pushing this case even longer, it's not how it's going to be done in this courtroom. And it's been 18 settings, and that's not how this works.

The lack of notice of second counsel's motion to withdraw is not contradicted by the clerk's record—the motion to withdraw contains a certificate of service for the State but not for Balderrama herself. But neither Balderrama's late proffer nor her late address to the trial court establish that the trial court replaced second counsel arbitrarily or without good cause. *See London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016); *cf. Bowen v. Carnes*, 343 S.W.3d 805, 807 (Tex. Crim. App. 2011) (orig. proceeding) (mandamus record supported claim that trial court abused its discretion in granting State's motion to disqualify defendant's counsel of choice).

Rather, a principled reason apparent from the record exists to justify the trial court's removal of Balderrama's second counsel. The trial court removed her second counsel, based on counsel's motion to withdraw, because of "irreconcilable differences." TEX. CODE CRIM. PROC. art. 26.04(j)(2).

Moreover, "[i]f a defendant is displeased with [her] appointed counsel, [s]he must bring the matter to the court's attention." *Malcom*, 628 S.W.2d at 791. "Thereupon, the defendant carries the burden of proving that [s]he is entitled to a change of counsel." *Id*. Balderrama never expressed dissatisfaction with third counsel. We hold that, on the record before us, the trial court did not err in granting the second counsel's motion to withdraw and in appointing the third counsel. We therefore overrule Balderrama's seventh issue.

### *Issue 8-Cumulative Error*

In her final issue, Balderrama asserts cumulative error undermined the fundamental fairness of the trial proceedings. "It is conceivable that a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). But "[a] string of harmless errors does not arithmetically create reversible, cumulative error." *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of petition for discretionary review). Cumulative error occurs when multiple harmless errors synergistically cast a shadow upon the integrity of the verdict. *Id*.

The two errors we found and deemed harmless—the admission of the sports bar receipt and the inclusion of the per se definition of intoxication in the jury charge—are completely unrelated to one another and do not support a cumulative error claim; they had no symbiotic effect. *See Bleimeyer v. State*, 616 S.W.3d 234, 258–59 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Lumsden v. State*, 564 S.W.3d 858, 899 (Tex. App.—Fort Worth 2018, pet. ref'd). We therefore overrule Balderrama's final issue.

### CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH